IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **GEORGE C. LISHMAN II and VICKI LISHMAN, his wife,** <br><br> **Plaintiffs,** <br><br> v. <br><br> **ALFA LAVAL, INC., individually and as successor-in-interest to Sharples Corp., and TATE ANDALE, LLC,** <br><br> **Defendants.** | Civil Action No.: _____ <br><br> Transferor Court: <br> Court of Common Pleas <br> Philadelphia County <br><br> April Term <br> No. 220402429 |

### DEFENDANT ALFA LAVAL INC.'S NOTICE OF REMOVAL

PLEASE TAKE NOTICE that Defendant Alfa Laval Inc., incorrectly sued as "Alfa Laval, Inc., individually and as successor-in-interest to Sharples Corp.," ("Alfa Laval"), by counsel, pursuant to 28 U.S.C. §§ 1442 and 1446, hereby removes this civil action to the United States District Court for the Eastern District of Pennsylvania from the Court of Common Pleas in Philadelphia County, Pennsylvania. The specific grounds for removal are as follows:

### I.   OVERVIEW

1. On April 28, 2022, Plaintiffs George Lishman II ("Mr. Lishman") and Vicki Lishman (together, "Plaintiffs") filed their Complaint against Alfa Laval and one other defendant, commencing the action entitled *George C. Lishman II and Vicki Lishman v. Alfa Laval, Inc. and Tate Andale, LLC* in the Court of Common Pleas in Philadelphia County, Pennsylvania, No. 2204057076. A true and correct copy of the Complaint ("Lishman Compl.") is attached as **Exhibit 1**.

2. Alfa Laval was served with the Complaint on May 6, 2022. True and correct copies of the service of process transmittal are attached as **Exhibit 2**. The Complaint alleges that Mr.

Lishman was exposed to asbestos during his service in the United States Navy, as well as during jobs that he held both before and after his Navy career.

3. Alfa Laval did not file responsive pleadings in the Court of Common Pleas in Philadelphia County in advance of removing the case to this Court.

4. A true and correct copy of the state court docket is attached as **Exhibit 3**.

5. Alfa Laval has attached copies of all other pleadings and other papers filed in the state court action as **Exhibit 4**.

6. As to Alfa Laval, Plaintiffs appear to allege that Mr. Lishman was exposed to asbestos through Sharples lube oil purifiers during his service in the United States Navy. Lishman Compl. ¶ 4(a), Schedule 1.

7. Throughout the company's history, Sharples conducted a substantial amount of government contract work, manufacturing oil purifiers for use on United States Navy ships and submarines. At all times relevant to the allegations in the Complaint, Sharples manufactured and supplied these oil purifiers at the direction of the United States Navy and pursuant to the strict specifications of the United States Navy.

8. Any Sharples oil purifiers supplied to the United States Navy for use on the USS *Cony* were manufactured and supplied pursuant to the strict specifications of the Navy. If any asbestos-containing materials were used in the manufacture of oil purifiers supplied to the Navy, they were used pursuant to the specifications of the United States Navy. **Exhibit 5**[1] Decl. of Rear Admiral David P. Sargent, Jr. ("Sargent Decl.") ¶¶ 30-75, 87-111.

9. The Navy's contracts with the manufacturers of equipment used on its ships, including the USS *Cony*, specified in great detail all the materials, processes and testing that were

---

[1] Given the volume of documents supporting Real Admiral David. P. Sargent, Jr.'s Declaration, Alfa Laval has not filed them with this Notice of Removal. However, they will be provided on request.

2

required by invoking numerous Navy or Military Specifications and Standards. *Id*. These contracts were binding on Sharples. The equipment used on Navy ships and submarines conformed to and complied with the Government's specifications. Manufacturers could not vary from those detailed specifications and standards in any way without the express approval of the Navy and a modification to the contract documenting that approved change. *Id*.

10. As a result, Alfa Laval has colorable federal defenses to Plaintiffs' claims under *Boyle v. United Technologies Corp.,* 487 U.S. 500 (1988), *Yearsley v. WA Ross Construction Co.*, 309 U.S. 18 (1940), *Feres v. U.S.*, 340 U.S. 138 (1950), and the "combatant activities exception" of the Federal Tort Claims Act. This case is thus removable on the grounds of federal officer removal jurisdiction pursuant to 28 U.S.C. § 1442(a)(1).

12. This Notice of Removal is timely. The 30-day removal period prescribed by 28 U.S.C. § 1446(b) begins to run upon receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based. 28 U.S.C. § 1446(b)(1). Alfa Laval was served with the Complaint in this action on May 6, 2022, at which time it learned that this case was removable. Thus, this Notice of Removal, filed within 30 days of receipt through service of the Complaint, is timely.

13. This Notice of Removal and all exhibits hereto are being filed in the United States District Court for the district and division in which the state court action is pending. *See* 28 U.S.C. § 1446(a).

14. Pursuant to § 1446(a), Alfa Laval has filed herewith a copy of all process, pleadings, and orders served upon it in the case to date.

15. Alfa Laval is not required to notify, or obtain the consent of, any other defendant in this action to remove the entire case under § 1442(a)(1). *See* 28 U.S.C. § 1446(b)(2)(A)

(requiring all defendants to consent only when "a civil action is removed solely under section 1441(a)").

16. Notice of removal has been, or will be, filed with the Court of Common Pleas in Philadelphia County, Pennsylvania, and provided to all adverse parties pursuant to 28 U.S.C. § 1446(d).

## II.   JURISDICTION AND VENUE

17. The Court's subject matter jurisdiction is based on 28 U.S.C. §§ 1331 and 1442(a)(1) in that it is a civil action in which Plaintiffs' alleged right to relief necessarily depends on the resolution of a substantial question of federal law.

18. Venue is proper in Eastern District of Pennsylvania, because the state court action was filed in the Court of Common Pleas in Philadelphia County, Pennsylvania. 28 U.S.C. §§ 1442(a).

## III.   GROUNDS FOR REMOVAL

19. Removal is proper under 28 U.S.C. § 1442(a)(1) of any state court action against or directed to "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof … for or relating to any act under color of such office…." 28 U.S.C. § 1442(a)(1).

20. Removal pursuant to § 1442(a)(1) is not dependent on the plaintiff alleging a federal cause of action. "This statute overcomes the well-pleaded complaint rule by providing a method to remove a case brought in state court against a federal officer, or any other person acting under a federal officer, despite the absence of a federal cause of action." *Nesbiet v. Gen. Elec. Co.*, 399 F. Supp. 2d 205, 210 (S.D.N.Y. 2005) (citing *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999). This statute "enables the defendant to have the validity of his immunity defense adjudicated, in a federal forum." *Arizona v. Manypenny*, 451 U.S. 232, 242 (1981).

21. The Supreme Court has held that "the right of removal is absolute for conduct performed under color of federal office, and has insisted that the policy favoring removal 'should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1).'" *Id.* (quoting *Willingham v. Morgan,* 395 U.S. 402, 407 (1969)); *see also Papp v. Fore-Kast Sales Co., Inc.*, 842 F. 3d 805, 811-12 (3d Cir. 2016).

22. Removal pursuant to 28 U.S.C. § 1442(a)(1) is appropriate where the moving party (a) is a "person" within the meaning of the statute, (b) can demonstrate that it acted under the direction of a federal officer, (c) can demonstrate a "connection" or "association" between the plaintiff's claims and the acts it performed under color of federal office, and (d) can raise a colorable federal defense to the plaintiffs' claims. *See Papp*, 842 F.3d at 812; *In re Commonwealth's Motion to Appoint Counsel Against or Directed to Def Ass'n of Philadelphia*, 790 F.3d 457, 471 (3d Cir. 2015), *as amended* (June 16, 2015); see also Mesa v. California, 489 U.S. 121, 124-25, 129-31, 134-35 (1989); *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 776 (E.D. Pa. 2010) (quoting *Feidt v. Owens Corning Fiberglas Corp.*, 153 F.3d 124, 127 (3d Cir. 1998)); *Fung v. Abex Corp.*, 816 F. Supp. 569 (N.D. Cal. 1992); *Machnik v. Buffalo Pumps, Inc.*, 506 F. Supp. 2d 99, 102 (D. Conn. 2007). Here, Alfa Laval has alleged these requirements and is thus entitled to remove the case.

    **A.**    **Sharples Was a "Person" Acting Under the Direction of the Navy.**

23. A corporation is a "person" within the meaning of section 1442(a)(1). *Hagen*, 739 F. Supp. 2d at 776 n. 6 ("It is well settled that corporations such as Defendants do qualify as persons under the statute…."); *Pack v. AC&S*, 838 F. Supp. 1099 (D. Md. 1993); *Fung*, 816 F. Supp. at 572. Thus, Sharples was, at all relevant times, a "person" within the meaning of the statute.

24. An entity acts under a federal officer when it assists, or helps carry out, the duties or tasks of a federal superior. *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 152 (2007); *see also Papp*, 842 F.3d at 812 ("The 'acting under' requirement, like the federal removal statute overall, is to be 'liberally construe[d]' to cover actions that involve 'an effort to assist, or to help *carry out*, the federal supervisor's duties or tasks.'") (emphasis in original) (quoting *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1181 (7th Cir. 2012)). Stated differently, "[a] defendant acts under a federal officer where his or her actions that led to the lawsuit were based on a federal 'officer's direct orders or comprehensive and detailed regulations." *Hagen*, 739 F. Supp. 2d at 776 n. 6 (quoting *Good v. Armstrong World Indus., Inc.*, 914 F. Supp. 1125, 1128 (E.D. Pa. 1996)). Contracting to "provide a product that the Government was using during war—a product that in the absence of Defendants, the Government would have to produce itself"—under the close supervision of the Government has been held sufficient to satisfy the "acting under" prong of the analysis. *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 136-37 (2d Cir. 2008); *see Watson*, 551 U.S. at 153-54; *Papp*, 842 F.3d at 812 ("When, as occurred in this instance, 'the federal government uses a private corporation to achieve an end it would have otherwise used its own agents to complete,' that contractor is 'acting under' the authority of a federal officer.").

25. That is the case here. In supplying oil purifiers to be used on Navy ships, Sharples was acting under the direction of an officer of the United States within the meaning of 28 U.S.C. § 1442(a)(1) pursuant to its contracts with the Navy and in strict accordance with precise specifications provided by the Navy, including with respect to any asbestos-containing components used or any instructions or warnings provided. *See* Ex. 5, Sargent Decl. ¶¶ 30-75, 85-111. Compliance with these specifications was directly monitored by Navy inspectors. *See, e.g., id.* at ¶¶ 47, 54, 65. If the materials failed to conform to the detailed Navy specifications, the

Navy officers could and would reject the materials. *See, e.g.*, *id*. at ¶¶ 44-48, 54. Thus, the "acting under" requirement is satisfied.

### B. Alfa Laval Asserts Four Colorable Federal Defenses.

26. Alfa Laval has asserted facts establishing four colorable federal defenses that entitle it to remove this case: (1) the government contractor defense under *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988); (2) derivative immunity under *Yearsley v. WA Ross Construction Co.*, 309 U.S. 18 (1940); (3) derivative immunity under *Feres v. U.S.*, 340 U.S. 135 (1950); and (4) pre-emption under the "combatant activities exception" of the Federal Tort Claims Act.

27. "While the Court must require that the facts identified by the defendant support the federal defense, the Court is not called upon at this preliminary stage to pierce the pleadings or dissect the facts stated. Nor is the Court's function at this stage to determine credibility, weigh the quantum of evidence or discredit the source of the defense." *Hagen,* 739 F. Supp. 2d at 782.

> It is the sufficiency of the facts stated — not the weight of the proof presented — that matters. For policy reasons, Congress has erected a road to federal court for litigants who can invoke a federal defense. It is not the Court's role to impose judicially created tolls on those who seek to travel on it. Thus, the Court concludes that a defense is colorable for purposes of determining jurisdiction under Section 1442(a)(1) if the defendant asserting it identifies facts which, viewed in the light most favorable to the defendant, would establish a complete defense at trial.

*Id.* at 782-83; *see also Papp*, 842 F.3d at 815 ("At the removal stage, [the defendant] needed only show that its asserted *Boyle* defense was 'colorable,' which is to say that the defense was 'legitimate and [could] reasonably be asserted, given the facts presented and the current law.'"); *Magnin v. Teledyne Continental Motors*, 91 F.3d 1424, 1427 (11th Cir. 1996) (ultimate validity of defense not to be determined at time of removal).

28. Sharples' manufacture of equipment used on Naval ships like the USS *Cony* was done according to the strict specifications of the Navy and under the strict supervision of the Navy,

7

including as to specifications and other requirements related to warnings. *See* Ex. 5, Sargent Decl. ¶¶ 30-75, 87-111.

29. The Navy selected the component parts and materials for its ships and submarines, and specified their design, including the use of asbestos, if any. *Id*. The Navy required equipment manufacturers to supply drawing and plans, which the Navy would approve and sometimes revise or comment on before equipment was constructed and shipped. *See, e.g., id*. at ¶ 47. Equipment could not have been installed on Navy vessels unless it was first determined by the Navy to be in conformity with all applicable Navy specifications. *See id*. at ¶¶ 65.

30. Manufacturers like Sharples could not vary from those detailed requirements without prior approval from the Navy. *See id*. at ¶¶ 30-75, 85-111.

31. To achieve its objective of ensuring that any markings on the component parts or materials used in the construction of Navy ships filled the specific informational role the Navy desired, for the specific Navy audience and environment, the Navy developed precise specifications as to the nature of any markings, communications, or directions affixed to or made a part of any equipment supplied by equipment manufacturers for ultimate use on Navy ships. *See id*. at ¶¶ 59-64, 67-70, 87-111.

32. Manufacturers like Sharples would not have been permitted, under the specifications, associated regulations and procedures, nor under the actual practice as it evolved in the field, to vary or to deviate in any respect from Navy specifications in supplying equipment, including affixing any type of warning or caution statement to equipment intended for installation in a Navy ship, beyond those specifically required by the Navy without prior discussion and express approval by the Navy. *Id*.

33. The Navy similarly had precise specifications as the nature of written materials to be delivered with equipment supplied by manufacturers such as Sharples and typically required manufacturers to submit draft technical manuals for detailed review and feedback. Such manuals included safety information to the extent – and only to the extent – directed by the Navy. *See id*.

34. The Navy also had detailed requirements for how equipment it purchased from manufacturers like Sharples had to be packaged. *See id*.

35. The Navy also exercised control over equipment manufacturers like Sharples by requiring in process testing and approval. *See, e.g., id*. at ¶¶ 44, 47, 66.

36. Further, the Navy required manufacturers like Sharples to conduct extensive testing at the manufacturing facility, including shock testing, balance testing, vibration testing, noise testing, surge load testing, tolerance measurement, endurance testing, radiographic testing, and more at the manufacturer's facility before the equipment was shipped. The Navy then reviewed the results before accepting the equipment, and subjected the equipment to further testing after delivery. *See, e.g. id.* at ¶¶ 44, 47, 51.

37. In sum, all equipment manufactured by Sharples to be used on Navy ships and submarines was subject to thorough inspection and testing by the Navy prior to approval to ensure complete conformity with its specifications. *See generally* Ex. 5, Sargent Decl.

38. The Navy had state of the art knowledge concerning the potential risks associated with exposure to asbestos. The Navy was, and still is, one of the world's largest heavy industrial concerns and had its own industrial hygiene program to provide protection for its uniformed and civilian workforce. As a result, Navy organizations, including the Bureau of Medicine and Surgery, the Bureau of Ships, and their successors, developed and acquired state of the art knowledge concerning the potential risks or hazards relating to work with or around asbestos-

containing materials and equipment. The Navy possessed information superior to that of its government contractors on issues of industrial hygiene and asbestos medicine, including any potential risks involved with use of asbestos-containing components or materials. *See, e.g., Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 291 (5th Cir. 2020) (en banc); *Ruppel*, 701 F.3d at 1185; *Shuman v. United States*, 765 F.2d 283, 285-86 (1st Cir. 1989); *Kraus v. Alcatel-Lucent et. al.*, No. CV 18-2119, 2018 WL 3585088, at *4-5 (E.D. Pa. July 25, 2018); *Gates, v. A.O. Smith Water Prod. Co.*, No. 3:13-CV-1435, 2014 WL 104965, at *5 (N.D.N.Y. Jan. 9, 2014); *Gordon v. Air & Liquid Sys. Corp.*, 990 F.Supp.2d 311, 315 (E.D.N.Y. 2014); *Marley v. Elliott Turbomachinery Co., Inc.*, 545 F.Supp.2d 1266, 1271 (S.D. Fla. 2008); *Blackman v. Asbestos Defendants (BHC)*, No. C-97-3066, 1997 WL 703773, *3 (N.D. Cal. 1997); *Pack v. AC and S, Inc., et al.*, 838 F.Supp. 1099 (D. Md. 1993); *Fung*, 816 F.Supp. at 569.

### i. *Boyle v. United Technologies Corp.*

39. Based on these facts, all of Plaintiffs' claims against Alfa Laval are affirmatively barred by the government contractor defense as set forth by the U.S. Supreme Court in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988). Pursuant to this federal defense, government contractors, such as Alfa Laval, are immune from liability arising from work performed for the United States military when: (a) the United States approved reasonably precise specifications; (b) the equipment conformed to these specifications; and (c) the equipment supplier warned the military about any hazards involved in the use of the equipment that are known to the equipment supplier but not known to the military. *Boyle,* 487 U.S. at 512; *see also Papp*, 842 F.3d at 814.

40. Analyzing the *Boyle* factors in light of the facts set forth above, it is clear that Alfa Laval has a colorable federal defense with respect to Plaintiffs' claims: (a) the Navy provided strict

10

design specifications for the manufacture of equipment used on the USS *Cony*, including asbestos-containing components, if any, (b) Sharples complied with the Navy's specifications for the manufacture of such equipment, including the use of asbestos, if any, and (c) the Navy had state of the art knowledge and was aware of potential health hazards of working with or around asbestos-containing materials, and thus, Sharples would not have had knowledge of any hazards associated with the use of the equipment or materials which was not already known to the United States. Alfa Laval is thus entitled to the government contractor defense with respect to Plaintiffs' claims. *See Papp*, 842 F.3d at 814 (3d Cir. 2016); *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 298 (5th Cir. 2020); *Betzner v. Boeing Company*, 910 F.3d 1010, 1016 (7th Cir. 2018); *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 256 (4th Cir. 2017); *Ripley v. Foster Wheeler LLC*, 841 F.3d 207 (4th Cir. 2016); *Ruppel*, 701 F.3d at 1183; *Vedros v. Northrop Grumman Shipbuilding, Inc.*, No. CIV.A. 2:11-67281-ER, 2012 WL 3155180, at *7 (E.D. Pa. Aug. 2, 2012); *Marley*, 545 F.Supp. at 1271; *Pack*, 838 F.Supp. at 1103.

ii.     **Yearsley v. WA Ross Construction Co.**

41.     Alfa Laval is also entitled to federal officer removal under 28 U.S.C. 1442(a)(1) based upon the separate and additional federal defense of derivative sovereign immunity as set forth in *Yearsley v. WA Ross Construction Co.*, 309 U.S. 18 (1940).

42.     *Yearsley* established that a government contractor, performing at the direction and authorization of a government officer, is immune from suit based upon performance of the contract. *Id.* at 20-21; *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 673 (2016), *as revised* (Feb. 9, 2016) ("Where the Government's 'authority to carry out the project was validly conferred, that is, if what was done was within the constitutional power of Congress,' we explained, 'there is no

liability on the part of the contractor' who simply performed as the Government directed." (quoting *Yearsley*)).

43. For the reasons previously stated herein, that is the case here. To the extent Sharples used any asbestos-containing components in the manufacture of equipment used on the USS *Cony*, it did so as a result of the Navy's strict design specifications. In other words, any use of asbestos-containing component parts occurred at the direction of the Navy, acting pursuant to government authorization, such that if the government had performed these acts directly, it would be immune from suit. Alfa Laval should be as well.

### iii.  *Feres v. U.S.*

44. Alfa Laval has also asserted a colorable defense under *Feres v. U.S.*, 340 U.S. 135 (1950), and it may invoke federal officer removal. In *Feres*, the United States Supreme Court held that the United States government is immune from suit by service members for "injuries that arise out of or in the course of activity incident to service." *Id.* at 146. Here, Sharples acted under the direction and control of the United States Navy, and Alfa Laval is entitled to derivative immunity.

45. Plaintiffs allege that Mr. Lishman served in the United States Navy, and the Complaint ostensibly alleges that he was exposed to asbestos while serving on two Navy ships—the USS *Shenandoah*, and the USS *Cony*. Under *Feres*, Plaintiffs plainly could not assert a claim against the United States for Mr. Lishman's service-related injuries.

46. As discussed herein, to the extent Sharples supplied equipment to the United States Navy for use on the USS *Cony*, it did so according to the strict specifications of the Navy, including the use of asbestos, if any. As a government contractor following the specifications of the Navy, Alfa Laval should be entitled to the same immunity afforded the United States under *Feres*.

### iv.  *Combatant Activities Exception*

47. Alfa Laval is also entitled to removal under 28 U.S.C. 1442(a)(1) based upon its colorable federal defense under the "combatant activities exception" of the Federal Tort Claims Act, which bars suit against the federal government for claims "arising out of the combatant activities of the military or naval forces, or the Coast Guard, during time of war." 28 U.S.C. § 2680(a). The principles underlying the combatant activities exception have been extended to preempt claims against government contractors. *See, e.g., Saleh v. Titan Corp.*, 580 F.3d 1 (D.C. Cir. 2009); *Koohi v. United States,* 976 F.2d 1328, 1336 (9th Cir. 1992); *Johnson v. United States*, 170 F.2d 767, 770 (9th Cir. 1948).

48. The Third Circuit has adopted a two-prong test to determine whether the "combatant activities" exception applies. *Harris v. Kellogg Brown & Root Services, Inc.*, 724 F.3d 459 (3d Cir. 2013). The first prong is "whether the contractor is integrated into the military's combatant activities." *Id.* at 481. The second prong is "whether the contractor's actions were the result of the military's retention of command authority" over the activities at issue. *Id.* Here, both prongs are satisfied.

49. Sharples' manufacture of oil purifiers for use on Navy destroyers satisfies the "combatant activities" prong. A contractor does not have to participate in actual combat to invoke immunity under this provision. Rather, combatant activities "include not only physical violence but activities both necessary to and in direct connection with actual hostilities." *Id.* (citations omitted). Here, the USS *Cony* was commissioned in 1942 and used by the Navy during World War II.[2] Thus, it is clear that by supplying oil purifiers for use on that ship, Sharples was engaged in activities "both necessary to and in direct connection with actual hostilities."

---

[2] See NavSource Online: Cruiser Photo Archive, USS Cony (DD-508 / DDE-508), available at http://www.navsource.org/archives/05/508.htm. *See also* https://en.wikipedia.org/wiki/USS_Cony_(DD-508).

50. The second prong is also satisfied. As discussed herein, the Navy retained command control over the equipment on the ship and specified the materials to be used, including asbestos-containing components, if any.

51. Thus, Alfa Laval has asserted a colorable defense that it is entitled to immunity under the "combatant activities" exception to the Federal Tort Claims Act.

### C. Alfa Laval Has Demonstrated a Connection Between Plaintiffs' Claims and the Acts It Performed Under Color of Federal Office.

52. Finally, Alfa Laval has plainly demonstrated a "connection" or "association" between Plaintiffs' claims in this action and the acts taken by Shaprles under the direction of federal officers. Plaintiffs' claims against Alfa Laval appear to arise from Mr. Lishman's alleged exposure to asbestos-containing components of equipment manufactured for the Navy for use on Navy ships pursuant to the specifications of Sharples' contracts with the Navy. As set forth above, the claims against Alfa Laval are inseparable from the government specifications that required the use of asbestos, if any, such that a clear causal nexus exists between Plaintiffs' claims and the acts performed by Sharples under color of federal office. *See Boyle,* 487 U.S. 500; *see also Papp*, 842 F.3d at 813; *Baker v. Atlantic Richfield Company*, 962 F.3d 943 (7th Cir. 2020); *Sawyer*, 860 F.3d at 258; *Ripley*, 841 F.3d at 211; *Marley,* 545 F.Supp.2d at 1271; *Mitchell v. AC & S, Inc.*, No. CIV.A. 4:04CV2713, 2004 WL 3831228, at *12-13 (E.D. Va. Dec. 15, 2004); *Sundstrom v. McDonnell Douglas Corp.,* 816 F.Supp. 587 (N.D. Cal. 1993); *Pack*, 838 F.Supp. 1099; *Fung*, 816 F.Supp. 569. All the more so, a "connection" or "association" between the act in question and the federal office has been demonstrated.

### IV. CONCLUSION

53. Removal of this action is proper under 28 U.S.C. § 1442 (a)(1).

14

54. Should Plaintiffs move to remand this case, Alfa Laval respectfully requests an opportunity to respond more fully in writing, including the submission of additional affidavits and authority.

55. Alfa Laval reserves all of its defenses.

WHEREFORE, Alfa Laval Inc. has stated sufficient bases for removal under § 1442, and thus, respectfully requests that this matter proceed in federal court. This Notice has been served on all counsel of record on the date and manner stated in the Certificate of Service.

Respectfully submitted this 26th day of May, 2022.

**KENT/McBRIDE, P.C.**

BY:   s/ Theresa Mullaney
      Theresa M. Mullaney, Esquire
      Kent/McBride, P.C.
      1617 John F. Kennedy Blvd., Suite 1140
      Philadelphia, PA 19103
      Attorney ID No. TM1349
      Tel. (215) 568-1800; F (215)568-1830
      *Counsel for Defendant, Alfa Laval Inc.*

## CERTIFICATE OF SERVICE

    I, Theresa M. Mullaney, hereby certify that a copy of the attached Notice of Removal and its attachments was served upon all parties of record by first class U.S. Mail, postage prepaid, on May 26, 2022.

                              **KENT/McBRIDE, P.C.**

                    BY:   s/ Theresa Mullaney
                                Theresa M. Mullaney, Esquire
                                Kent/McBride, P.C.
                                1617 John F. Kennedy Blvd., Suite 1140
                                Philadelphia, PA 19103
                                Attorney ID No. TM1349
                                Tel. (215) 568-1800; F (215)568-1830
                                *Counsel for Defendant, Alfa Laval Inc.*